UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JAMES S.C.,[1]                           )   NO. CV 19-5991-KS
                    Plaintiff,           )
                                         )
          v.                             )   MEMORANDUM OPINION AND ORDER
                                         )
ANDREW M. SAUL, Commissioner             )
of Social Security,                      )
                    Defendant.           )
_____  )

INTRODUCTION

Plaintiff filed a Complaint on July 11, 2019, seeking review of the denial of his application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. (Dkt. No. 1.)  The parties have consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12.)  On April 27, 2020, the parties filed a Joint Stipulation. (Dkt. No. 19 ("Joint Stip.").)  Plaintiff seeks an order reversing the Commissioner's decision with an award of disability benefits or, in the

---

[1]  Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

alternative, a remand for further proceedings.  (Joint Stip. at 34.)  The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, that the matter be remanded for further proceedings.  (*Id.* at 34-35.)  The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff was born on August 4, 1995.  (Administrative Record ("AR") 172.)  On August 1, 2003, the Commissioner determined that Plaintiff was disabled as of June 4, 2003 (AR 160), based on the medically determinable impairment of splenomegaly (AR 162).  On May 14, 2014, the Commissioner determined that Plaintiff was no longer disabled as of May 1, 2014, and that determination was upheld on reconsideration by a State Agency Disability Hearing Officer.  (AR 160.)  On July 29, 2016, an Administrative Law Judge ("ALJ") issued an unfavorable decision concluding that Plaintiff's disability ended on May 1, 2014.  (AR 160-67.)  On August 11, 2017, the Appeals Council dismissed Plaintiff's request for review, upon his request to withdraw it.  (AR 198-200.)

In the interim, on August 8, 2016, Plaintiff protectively filed an application for SSI (AR 15, 173, 185), the subject of this action.  Plaintiff alleged disability beginning on October 1, 2001 because of "Auto-immune; [thrombocytopenia]; hepatosplenomegaly; [Spondylosis]; [Rheumatoid] arthritis; COPD; [Interstitial] lung fibrosis; Alpha-1 [antitrypsin]; Scoliosis; and Cyanosis."  (AR 185-86; *see also* AR 173-74.)[2]  After the Commissioner denied Plaintiff's application initially (AR 172) and on reconsideration (AR 184), Plaintiff requested a hearing (AR 217-19).

///

---

[2]     Plaintiff was 21 years old on his protective application date (AR 23) and thus met the agency's definition of a younger person.  *See* 20 C.F.R. § 416.963(c).

2

At a hearing held on June 6, 2018, at which Plaintiff appeared with counsel, an ALJ heard testimony from Plaintiff, Plaintiff's mother, and a vocational expert. (AR 66-118.) At a supplemental hearing held on January 30, 2019, at which Plaintiff appeared with counsel, the ALJ heard testimony from a medical expert. (AR 33-65.) On February 21, 2019, the ALJ issued an unfavorable decision denying Plaintiff's application for SSI. (AR 15-25.) On May 23, 2019, the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

As an initial matter, the ALJ found that the presumption of continuing non-disability arising from the prior ALJ's decision had been rebutted because of updated opinion evidence. (AR 15.) The ALJ then made the following findings under the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of August 8, 2016. (AR 17.) At step two, the ALJ found that Plaintiff had the following severe impairments: "spinal disorder, asthma, alpha 1 antitrypsin (A1AT) deficiency carrier, thrombocytopenia, nonalcoholic liver disease, splenomegaly, hypothyroidism (20 C.F.R. § 416.920(c))." (AR 18.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (AR 18.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform "light work" and was "further limited to no more than frequent postural activity, but no more than occasional stooping" and "no more than occasional exposure to pulmonary irritants, unprotected heights, or dangerous machinery." (AR 19.) At step four, the ALJ found that Plaintiff had no past relevant work. (AR 23.) At step five, the ALJ relied on the vocational expert's testimony to find that Plaintiff could perform other work in the national economy, in the occupations of office helper, sales attendant, and "marker, retail trade." (AR 24.)

1    Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the
2    Social Security Act.  (AR 25.)

3

4                                    **STANDARD OF REVIEW**

5

6         Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine
7    whether it is free from legal error and supported by substantial evidence in the record as a
8    whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than
9    a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind
10   might accept as adequate to support a conclusion.'"  *Gutierrez v. Comm'r of Soc. Sec*., 740
11   F.3d 519, 522-23 (9th Cir. 2014) (citations omitted).  "Even when the evidence is susceptible
12   to more than one rational interpretation, we must uphold the ALJ's findings if they are
13   supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104,
14   1111 (9th Cir. 2012) (citation omitted).

15

16        Although this Court cannot substitute its discretion for the Commissioner's, the Court
17   nonetheless must review the record as a whole, "weighing both the evidence that supports and
18   the evidence that detracts from the Commissioner's conclusion."  *Lingenfelter v. Astrue*, 504
19   F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human
20   Servs*., 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted).  "The ALJ is responsible for
21   determining credibility, resolving conflicts in medical testimony, and for resolving
22   ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted).

23

24        The Court will uphold the Commissioner's decision when the evidence is susceptible to
25   more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)
26   (citation omitted).  However, the Court may review only the reasons stated by the ALJ in his
27   decision "and may not affirm the ALJ on a ground upon which he did not rely."  *Orn*, 495 F.3d
28   at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).  The Court will not

reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISCUSSION

The parties raise four issues: (1) whether the ALJ supported an adverse assessment of Plaintiff's subjective symptom testimony and the third party statement with substantial evidence; (2) whether the ALJ committed harmful legal error in the assessment of the medical evidence; (3) whether the ALJ erred by not applying pertinent Social Security Rulings in the written decision; and (4) whether the ALJ properly developed the record.  (Joint Stip. at 3.)

## I.  The ALJ Did Not Reversibly Err In Assessing The Testimony Of Plaintiff And His Mother (Issue One).

In Issue One, Plaintiff contends that the ALJ did not properly evaluate Plaintiff's subjective symptom testimony and the lay witness testimony of Plaintiff's mother.  (Joint Stip. at 3-7, 16-17.)

### A.  Plaintiff's Subjective Symptom Testimony.

An ALJ must make two findings in assessing a claimant's pain or symptom allegations. Social Security Ruling ("SSR") 16-3P, 2017 WL 5180304, at *3; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler*, 775 F.3d at 1102 (citation omitted). "Second, if the claimant has produced that evidence, and the ALJ

has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

Beginning on March 28, 2016, SSR 16-3P rescinded and superseded the Commissioner's prior rulings as to how the Commissioner will evaluate a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. *See* SSR 16-3P, 2017 WL 5180304, at *1. Because the ALJ's decision in this case was issued on February 21, 2019, it is governed by SSR 16-3P. *See id.* at *13 and n.27. In pertinent part, SSR 16-3P eliminated the use of the term "credibility" and clarified that the Commissioner's subjective symptom evaluation "is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2; *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). These changes are largely stylistic and are consistent in substance with Ninth Circuit precedent that existed before the effective date of SSR16-3P. *See Trevizo*, 871 F.3d at 678 n.5.

### 1.    Background.

Plaintiff testified about his conditions as follows. His A1AT deficiency interferes with his liver and spleen. (AR 74.) He is tired "all day" and feels like he cannot do anything. (*Id.*) He needs to lie down for two or three hours during the day. (AR 75.) He has a nodule in his lung that makes it difficult to breathe. (*Id.*) He cannot walk very far, cannot climb more than

one flight of stairs, and cannot exercise.  (AR 76.)  He uses an inhaler every other day.  (*Id.*)
He has lower back pain that makes it difficult to bend or lift more than 10 pounds.  (*Id.*)  He
does not sleep through the night.  (AR 76-77.)  He can walk for 5 or 10 minutes.  (AR 77.)  He
takes medication for a thyroid issue, but he still has fatigue.  (AR 78-79.)  He has Raynaud's
phenomenon, which causes swelling in his fingers and feet.  (AR 79.)  He stays at home for
most of the day.  (AR 80.)  Once a week, he goes to the library.  (*Id.*)  He has an enlarged
spleen but takes no medication for it.  (AR 80-81.)  He could not perform a simple job that
involved sitting at a table because he cannot sit for one position for too long and because his
back hurts after 45 minutes.  (AR 82.)  He also would have problems with attendance because,
in the past, he missed a lot of school due to his issues.  (*Id.*)

## 2.   Analysis.

The ALJ initially found that Plaintiff's medically determinable impairments could
reasonably be expected to cause the alleged symptoms.  (AR 20.)  However, the ALJ next
found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of
these symptoms were not entirely consistent with the medical evidence and other evidence in
the record.  (*Id.*)  As support, the ALJ stated three reasons.  (AR 20-21, 22.)  As discussed
below, the ALJ stated clear and convincing reasons based on substantial evidence.

### a.   Partially consistent with the evidence of record.

First, the ALJ found that Plaintiff's allegations were "partially consistent with the
evidence of record." (AR 20.)  An ALJ may reject a claimant's subjective symptom allegations
because they are inconsistent with the objective medical evidence, so long as it is not the sole
reason.  *See, e.g.*, *Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form
the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his
credibility analysis.");  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While

subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

The ALJ cited the following objective medical evidence.  Plaintiff had a normal gait, "5 out of 5" strength in his extremities, and the ability to exercise full range of motion of the lumber spine.  (AR 20-21 [citing AR 803]).  His leg pain likely was due to deconditioning rather than a medically determinable impairment.  (AR 21 [citing AR 962].)  Finally, his pulmonary function tests "generally reveal either normal functioning" or "very minimal" change in diffusion capacity.  (AR 21 [citing AR 661, 947-48].)

Plaintiff alleges that the objective medical evidence showed he had "a severely enlarged spleen" and "a significant cardiac abnormality."  (Joint Stip. at 6.)  As to the enlarged spleen, the ALJ properly accounted for that condition by finding that Plaintiff's splenomegaly was a medically determinable impairment (AR 18), but then pointing to objective medical findings showing that his strength and motion were normal or improved with physical therapy (AR 21).  As to the significant cardiac abnormality, the ALJ properly accounted for that condition by pointing to evidence showing that Plaintiff's transthoracic echocardiogram was normal.  (AR 23 (citing AR 951, 953-56).)  Thus, the ALJ properly accounted for the objective medical evidence in stating a clear and convincing reason based on substantial evidence to discount Plaintiff's subjective allegations.

### b.    Responsiveness to physical therapy and treatment.

Second, the ALJ found that Plaintiff's breathing condition was responsive to physical therapy and treatment.  (AR 21.)  An ALJ may find that a claimant's subjective symptom allegations are undermined by evidence of treatment that has been effective.  *See Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (finding that the ALJ "reasonably noted that the

underlying complaints upon which [the claimant's] reports of pain were predicated had come under control"); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") (citing *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication)); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that an ALJ reasonably pointed to the claimant's admission that his diabetes was controlled by medication).

The ALJ cited evidence that Plaintiff "demonstrated the ability to improve his exercise capacity" after two months of physical therapy (AR 671), and that his airflow obstruction was reversible with the use of a bronchodilator (AR 884). (AR 21.) This evidence permitted a reasonable inference that, with appropriate treatment, Plaintiff's breathing condition was not as limiting as he alleged. Thus, this was a clear and convincing reason based on substantial evidence to discount Plaintiff's subjective allegations.

### c.    Conservative treatment.

Finally, the ALJ found that Plaintiff's treatment history was not "consistent with the degree of limitation alleged" (AR 21) and "has been highly conservative" (AR 22). "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1985)); *see also Tommasetti*, 533 F.3d at 1040 (response to conservative treatment may undermine a claimant's reports regarding the disabling nature of his symptoms).

Here, the ALJ found that Plaintiff's allegations were inconsistent with evidence that he is "only using albuterol, a short-acting bronchodilator, on an as-needed basis" (AR 885) or

"sometimes not at all" (AR 949); "has not used a long-acting bronchodilator in over 12 months" (AR 885); and has never "been hospitalized for respiratory reasons" (AR 752). (AR 21.) Later in her decision, the ALJ similarly found Plaintiff's allegations were inconsistent with evidence of "highly conservative" treatment, based on evidence showing that he used levothyroxine for hypothyroidism (AR 469), used an albuterol inhaler as needed for shortness of breath (AR 885), and did not require augmentation therapy for his A1AT deficiency (AR 716, 730, 885). (AR 22.)

Evidence that Plaintiff used an inhaler only as needed, rarely, or sometimes not at all permitted the ALJ to draw a reasonable inference that Plaintiff's lung impairment was not as serious as he alleged. *See*, *e.g.*, *Clark v. Astrue*, 2012 WL 2320783, at *3 (C.D. Cal. June 19, 2012) (conservative treatment was a permissible basis to reject a claimant's complaints relating to breathing difficulties where the claimant used inhalers on an as needed basis and was not hospitalized); *Martinez v. Astrue*, 2013 WL 663570, at *3 (C.D. Cal. Feb. 22, 2013) (same where the claimant used an inhaler every two weeks); *Rolston v. Colvin*, 2015 WL 685162, at *12 (D. Ariz. Feb. 18, 2015) (same where the claimant's treatment typically resulted in a prescription of inhalers and recommendations to stay hydrated and quit smoking). Moreover, evidence that Plaintiff did not need augmentation therapy permitted the ALJ to draw a reasonable inference that Plaintiff's A1AT deficiency was not as serious as he alleged. Thus, this was a clear and convincing reason based on substantial evidence to discount Plaintiff's subjective allegations.

## B.    Lay Witness Testimony of Plaintiff's Mother.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)) (internal quotation marks omitted). "Descriptions by friends and family members in a position

to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Bilby v. Schweiker*, 762 F.2d 716, 719 n.3 (9th Cir. 1985)).  An ALJ is "required to consider and comment upon competent lay testimony, as it concerned how [a claimant's] impairments impact his ability to work." *Bruce*, 557 F.3d at 1115.  An ALJ must "provide specific, germane reasons for discounting lay witness testimony." *Taylor v. Comm'r of Soc. Sec. Admin*., 659 F.3d 1228, 1234 (9th Cir. 2011).

### 1.    Background.

Plaintiff's mother, P.S.S., testified at the first administrative hearing about Plaintiff's condition.  (AR 84.)  In pertinent part, P.S.S. testified that Plaintiff spends most of the day in bed (AR 85), that he has a heart problem called pulmonary hypertension (AR 87), that his liver problem has become progressively worse and may require a liver transplant (*id*.), and that he may only live to age 30 (AR 103).  The ALJ did not credit this testimony:

> [P.S.S.] made a number of statements that are wholly unsupported by the record. She said that [Plaintiff] may eventually need a liver transplant and will be lucky to live to 30 (Hearing Audio), whereas [Plaintiff's] doctors have stated that [Plaintiff] does not require even augmentation therapy, much less a liver transplant [AR 883-85].  She said that [Plaintiff's] fatigue and breathing problems are caused by pulmonary hypertension, which is contradicted by the results of a transthoracic echocardiogram [AR 951, 953-56].  As noted by Dr. Menz, [Plaintiff's] gastroenterologist, [P.S.S.'s] understanding of [Plaintiff's] liver disease is less than ideal [AR 818].  Because [P.S.S.'s] statements are not supported by medical evidence, I give them minimal weight.

(AR 23.)

2. **Analysis.**

The ALJ assessment stated two specific, germane reasons for giving minimal weight to P.S.S.'s testimony. First, the ALJ identified inconsistencies between P.S.S.'s testimony and the medical evidence. (AR 23 (citing AR 883-85, 951, 953-56).) "'Inconsistency with medical evidence' is one reason that [the Ninth Circuit] has concluded is germane, *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005), although [the Ninth Circuit] has also concluded that 'a lack of support from the overall medical evidence is . . . not a proper basis for disregarding [lay] observations,' *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017)." *Burkett v. Saul*, 806 F. App'x 509, 512-13 (9th Cir. 2020) (internal quotation marks omitted). The ALJ's reasoning reflected a permissible analysis under *Bayliss* rather than an impermissible analysis under *Diedrich*. Despite the ALJ's use of the word "unsupported," the full context of the ALJ's reasoning reflects that the ALJ was relying on inconsistencies, rather than simply a lack of support, to discount P.S.S.'s testimony. By citing medical evidence of Plaintiff's liver and heart conditions (AR 883-85, 951, 953-56) and concluding that such evidence "contradicted" P.S.S.'s testimony (AR 23), the ALJ properly stated a specific, germane reason to give minimal weight to the lay witness testimony.

Second, the ALJ noted that one of Plaintiff's physicians had commented that P.S.S.'s understanding of Plaintiff's liver disease was less than ideal. (AR 23 (citing AR 818).) An ALJ may reject a lay witness's testimony when there is more reliable evidence from medical professionals. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (holding that an ALJ properly rejected the testimony of family members about a claimant's fatigue when it was inconsistent with a physician's reports that were more persuasive). Thus, this reason also was specific and germane to P.S.S.'s testimony.

Plaintiff contends that, even if P.S.S. was unqualified to diagnose Plaintiff's heart and liver conditions (because P.S.S. is not a health care professional), P.S.S. still was a competent

lay witness to Plaintiff's symptoms.  (Joint Stip. at 16.)  A lay witness, while not competent to make medical diagnoses, is competent to describe a claimant's symptoms.  *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  Here, however, the ALJ did not purport to dismiss P.S.S.'s testimony as incompetent because of her lack of qualifications.  And contrary to Plaintiff's contention, the ALJ's two reasons went not only to P.S.S.'s testimony about Plaintiff's diagnoses, but also to P.S.S.'s testimony about Plaintiff's symptoms.  The ALJ reasonably found that P.S.S.'s testimony about Plaintiff's symptoms (*e.g.*, that he would need a liver transplant and may not live beyond age 30) was contradicted by medical evidence showing that Plaintiff's heart and liver conditions were not as serious as P.S.S. alleged and that P.S.S's understanding was less than ideal.  (AR 23.)  Thus, the ALJ's reasons were germane to P.S.S.'s lay observations of Plaintiff's symptoms.  *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*per curiam*) (holding that lay witnesses who testified that the claimant was impaired from a mental disorder and stroke were properly discounted without discussion because it conflicted with the available medical evidence).  Thus, reversal is not warranted for this issue.

## II.   The ALJ Did Not Reversibly Err In Assessing The Medical Opinions (Issue Two).

In Issue Two, Plaintiff contends that the ALJ did not properly assess the opinions of two treating physicians, Dr. Hiltner and Dr. Daucette.  (Joint Stip. at 17-20, 25-26.)

### A.   Legal Standard.

There are three categories of physicians: treating physicians, examining physicians, and nonexamining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Treating physician opinions should be given more weight than examining or nonexamining physician opinions.  *Orn*, 495 F.3d at 632.  This is because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  *Magallanes v.*

*Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If the treating physician's opinion is not contradicted by another doctor, it may be rejected only if the ALJ provides "clear and convincing reasons supported by substantial evidence in the record."  *Orn*, 495 F.3d at 632.  If the treating physician's opinion is contradicted by another doctor, it may be rejected only by "specific and legitimate reasons supported by substantial evidence in the record."  *Id*.  Here, the treating physicians' opinions were contradicted by the opinions of an examining physician (AR 456-61), non-examining state agency physicians (AR 179-81, 193-95), and a non-examining medical expert (AR 55-57).  Thus, the ALJ could not reject the treating physicians' opinions unless she stated specific and legitimate reasons supported by substantial evidence in the record.

### B.    Dr. Hiltner.

Dr. Hiltner, a general practice physician, was Plaintiff's treating physician from October 2002 (AR 590) until April 2017 (AR 907).  In January 2015, Dr. Hiltner completed a questionnaire about Plaintiff's abilities.  (AR 590-93.)  In pertinent part, Dr. Hiltner wrote that, because of A1AT deficiency (AR 590), Plaintiff was capable of less than sedentary work (AR 591), would need unscheduled breaks for thirty minutes every two hours (AR 592) and would be absent from work more than four days per month (AR 593).  The ALJ gave "little weight" to Dr. Hiltner's opinion:

> [Dr. Hiltner's] opinion is inconsistent with the opinions of multiple pulmonary
> specialists:  treating provider Dr. Bajwa, who stated that [Plaintiff's] respiratory
> impairments are either well controlled or clinically asymptomatic [AR 850, 883-
> 84]; the pulmonologists at Cedars-Sinai Medical Center, who concluded that
> [Plaintiff's] respiratory symptoms are not likely to be caused by his A1AT
> deficiency [AR 952]; and impartial medical expert Dr. Maples, who testified that
> the evidence was inconclusive as to the cause of [Plaintiff's] respiratory

14

symptoms (Supplemental Hearing Audio).   Because Dr. Hiltner's opinion is inconsistent with the opinions of at least three experts in pulmonary medicine, I give it little weight.

(AR 23.)

An ALJ may reject a treating physician's opinion because it is "unsupported by the record as whole or by objective medical findings." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (internal citations omitted); *see also Tommasetti*, 533 F.3d at 1041 (ALJ reasonably found that a treating physician's questionnaire responses "were inconsistent with the medical records").   Here, it was reasonable for the ALJ to conclude that Dr. Hiltner's opinion was inconsistent with the opinions of pulmonary specialists who found that Plaintiff's A1AT deficiency was not the likely source of Plaintiff's alleged symptoms. *See Magallanes*, 881 F.2d at 752 (ALJ gave specific and legitimate reasons to reject a treating physician's opinion that was inconsistent with the objective findings of several orthopedic specialists and a neurosurgeon); *Rebensdorf v. Berryhill*, 773 F. App'x 874, 877 (9th Cir. 2019) (ALJ gave specific and legitimate reasons to reject a treating family practitioner's opinion that was inconsistent with the opinion of an orthopedic specialist and with objective medical evidence).   Indeed, the specialists determined that Plaintiff's A1AT deficiency was of a type which clinically does not cause pulmonary or liver disease.   (AR 818, 948, 952.)

Plaintiff contends that the ALJ should have discussed Dr. Hiltner's opinion in light of other factors, such as his extensive history of treating Plaintiff.   (Joint Stip. at 18-19.)   But the ALJ did acknowledge Dr. Hiltner's status as Plaintiff's treating physician.   (AR 23.) Moreover, the ALJ was not required to afford special weight to the length of Dr. Hiltner's treatment history in light of the ALJ's actual reasoning for rejecting Dr. Hiltner's opinion. Given that the ALJ relied on objective medical evidence from pulmonary specialists who found that Plaintiff's A1AT deficiency, the entire basis of Dr. Hiltner's opinion, was not the

15

likely source of Plaintiff's symptoms, it made no difference that Dr. Hiltner had a lengthy treatment history. In sum, the ALJ stated a specific and legitimate reason based on substantial evidence to give little weight to Dr. Hiltner's opinion.

### C.  Dr. Daucette.

Dr. Daucette also was one of Plaintiff's treating physicians. (AR 907.) In July 2017, Dr. Daucette completed a questionnaire on behalf of Plaintiff for a local housing program. (AR 411-13.) Dr. Daucette wrote that Plaintiff was an "individual with a disability" (AR 411) who needed housing without carpeting because of severe breathing problems (AR 412, 413).

The ALJ gave "no weight" to Dr. Daucette's "form opinion" because "[t]he criteria for disability under Social Security laws and regulations are different from those of a local housing authority." (AR 23.) An ALJ must consider all medical opinions, even opinions that use different disability criteria. *See Desrosiers*, 846 F.2d at 576. However, the ALJ's assessment here was not erroneous. Although an ALJ must consider all medical opinions, an ALJ is not required to give any special consideration to an opinion that merely concludes a claimant is disabled, without describing functional limitations. *See McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) (treating physician's statement that a claimant was disabled, without discussion of actual functioning, was legal question on an issue reserved to the Commissioner). Dr. Daucette's form opinion merely concluded that Plaintiff was disabled (AR 411), without describing any limitations other than an unquantified breathing problem (AR 412-13). The ALJ was not required to accept that conclusion. *See Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

//

//

Even assuming that the ALJ's assessment of Dr. Daucette's form opinion was erroneous, the error was harmless.  The ALJ gave practical effect to the only limitation Dr. Daucette identified, Plaintiff's need to avoid carpets because of a breathing problem, by limiting Plaintiff to a residual functional capacity with no more than occasional exposure to pulmonary irritants.  (AR 19.)  Thus, the ALJ's assessment was not reversible error.  *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ was not required to provide reasons for rejecting a physician's report when the residual functional capacity incorporated the physician's observations); *Grammer v. Berryhill*, 706 F. App'x 383, 384 (9th Cir. 2017) ("[A]ny error is harmless because the Residual Functional Capacity adequately accounts for all the limitations contained in [the physician's] opinion.") (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (concluding that no reasoning is required to reject a physician's opinion when the RFC adequately accounts for all limitations)).

### III.   The ALJ Did Not Reversibly Err By Failing To Consider Social Security Rulings (Issue Three).

In Issue Three, Plaintiff claims that the ALJ erred by failing to consider three Social Security Rulings ("SSRs").  (Joint Stip. at 26-28, 30.)

#### A.   Legal Standard.

"'SSRs do not have the force of law' but 'represent the Commissioner's interpretation of the agency's regulations.'"  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001)).  SSRs are binding on adjudicators, including ALJs.  *See Orn*, 495 F.3d at 636 (citing 67 Fed. Reg. 57859-02, 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedents in adjudicating cases.").)  An ALJ's departure from

established procedures set out in an SSR is reversible legal error. *See Bray v. Comm'r of Soc. Security Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

### B.     SSR 16-4P.

Plaintiff contends that the ALJ did not consider SSR 16-4P, 2016 WL 1575064 ("Using Genetic Test Results To Evaluate Disability"). (Joint Stip. at 26.) In pertinent part, the ruling states that an adjudicator "will consider all medical evidence, including genetic test results, when evaluating a claim for disability benefits." SSR 16-4P, 2016 WL 1575064, at *2. According to Plaintiff, SSR 16-4P was relevant here because of "objective medical evidence underlying [Plaintiff's] subjective symptoms." (Joint Stip. at 26.)

The ALJ did not fail to comply with the ruling in assessing Plaintiff's genetic disorder. The ALJ accepted Plaintiff's objective medical evidence of his genetic disorder (*i.e.*, his A1AT deficiency) as proof of a medically determinable impairment that could reasonably be expected to cause his alleged subjective symptoms. (AR 22.) Subsequently, however, the ALJ found that the "intensity, persistence, and limiting effects of his symptoms" from that genetic disorder and other conditions were not as significant as Plaintiff alleged. (*Id*.) In making that finding, the ALJ relied on clear and convincing reasons supported by substantial evidence from the record as a whole, as discussed above. The ALJ's analysis was consistent with SSR 16-4P's established procedure. *See* SSR 16-4P, 2016 WL 1575064, at *8 (commenting that "[g]enetic tests generally do not provide information about the degree of functional limitation" so adjudicators will draw from the record as a whole to make that determination).

### C.     SSR 14-3P.

Plaintiff contends that the ALJ did not consider SSR 14-3P, 2014 WL 2472009 ("Evaluating Endocrine Disorders Other Than Diabetes Mellitus"). (Joint Stip. at 26-27.) The

ruling gives information and guidance to adjudicators who evaluate endocrine disorders that include, as relevant here, hypothyroidism.  *See* SSR 14-3P, 2014 WL 2472009, at *3.  The ruling specifically states that "[s]ome of the symptoms and signs of hypothyroidism include weakness or fatigue, dry or coarse skin, slow or depressed speech, and adverse mental changes."  *Id*.  According to Plaintiff, the ALJ failed to consider that Plaintiff's hypothyroidism was a source of his fatigue and mental health issues.  (Joint Stip. at 27.)

The ALJ properly considered Plaintiff's hypothyroidism.  In the first place, the ALJ found that hypothyroidism was one of Plaintiff's medically determinable impairments (AR 18) and that such impairments could reasonably be expected to cause Plaintiff's alleged symptoms (AR 20).  But the ALJ then discounted Plaintiff's subjective allegations based on those impairments for clear and convincing reasons based on substantial evidence, as discussed above.  This was permitted by SSR 14-3P, which did not require that, simply because Plaintiff had hypothyroidism, the ALJ was required to credit Plaintiff's subjective allegations of fatigue and mental limitations.

Rather, the ALJ permissibly found that Plaintiff's pain and fatigue were not irreversible, based on evidence of Plaintiff's improvements during physical therapy.  (AR 21 (citing AR 671).)   Moreover, the ALJ noted that the evidence of Plaintiff's limitations from hypothyroidism was limited:  Plaintiff's physicians increased his dosage of levothyroxine, but they otherwise "have not remarked about the prognosis of [Plaintiff's] hypothyroidism."  (AR 20 (citing AR 469, 928).)  Given this evidence, the ALJ did not fail to comply with SSR 14-3P by declining to credit Plaintiff's subjective allegations about his hypothyroidism.

### D.    SSR 11-2P.

Finally, Plaintiff contends that the ALJ did not consider SSR 11-2P, 2011 WL 4055665 ("Documenting and Evaluating Disability In Young Adults").  (Joint Stip. at 27.)  In pertinent

19

part, the ruling states that, for disability determinations for claimants between the ages of 18 to approximately 25, an adjudicator will account for evidence from "other sources" (*i.e.*, lay witnesses) and evidence of the claimant's educational background. *See* SSR 11-2P, 2011 WL 4055665, at *4, *6-*7. According to Plaintiff, the "other source" testimony and evidence of his difficulty with school attendance were not properly considered, as the ruling required. (Joint Stip. at 26-27.)

The ALJ properly considered the evidence relevant to Plaintiff's young age. First, the ALJ properly considered the "other source" testimony (*i.e.*, the testimony of Plaintiff's mother), by stating specific, germane reasons to give it minimal weight, as discussed above. Second, although Plaintiff testified that attendance was a problem for him, and cited the fact that he "missed a lot of school" due to his health issues (AR 82), the ALJ properly discounted his testimony for clear and convincing reasons based on substantial evidence, as discussed above. Moreover, nothing in the record suggested that Plaintiff's school attendance problems were the type of serious educational difficulties contemplated by the ruling. *See* SSR 11-2P, 2011 WL 4055665, at *6-*7 (discussing evidence of educational background in the context of special education and Individualized Education Programs). Thus, the ALJ did not fail to comply with SSR 11-2P.

**IV.** **The ALJ Did Not Reversibly Err By Failing To Develop The Record (Issue Four).**

In Issue Four, Plaintiff claims that the ALJ failed to develop the record by failing to obtain the file from Plaintiff's prior award of disability benefits. (Joint Stip. at 30-31, 33.)

**A.**     **Legal Standard.**

It generally is the claimant's responsibility to furnish evidence to support a claim of disability. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); 20 C.F.R. § 416.912(a)

(2015).  But "the ALJ shares the burden at each step" of the Commissioner's five-step evaluation, which includes an "affirmative duty" to help the claimant develop the record.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 n.3 (9th Cir. 1999).  An ALJ has a special duty to fully and fairly develop the record to assure that the claimant's interests are considered, even when the claimant is represented by counsel.  *See Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).  "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citation and internal quotation marks omitted); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) (stating that an ALJ has a duty to fill a "perceived gap" in the record).  "A specific finding of ambiguity or inadequacy of the record [by the ALJ] is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy."  *McLeod*, 640 F.3d at 885.

### B.    Analysis.

As noted, Plaintiff was awarded benefits in 2003 (when he was seven years old) based on the medically determinable impairment of splenomegaly.  (AR 160, 162.)  On July 29, 2016, a prior ALJ issued a decision finding that Plaintiff was no longer disabled as of May 1, 2014.  (AR 160-67.)  On August 8, 2016, Plaintiff protectively filed the current SSI application.  (AR 15, 173, 185.)  Plaintiff contends that the ALJ for the current application erred by failing to obtain Plaintiff's prior favorable decision from 2003 and the related medical records, which would have produced critical information, particularly about his genetic disorder.  (Joint Stip. at 31.)

Plaintiff relies on two publications.  First, Plaintiff cites the Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-6-58(A), which states in pertinent part that an ALJ "will generally admit into the record any evidence that he or she determines is material to the issues in the case."  (Joint Stip. at 31.)  Second, Plaintiff cites Program Operations Manual

System ("POMS") DI 81020.030, which states in pertinent part that "[e]vidence from a previously processed case may have adjudicative significance to the evaluation and determination of the current case." These publications, however, are not binding on ALJs and are not legally enforceable by federal courts. *See Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010) ("Like HALLEX, POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ.") (citing *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) ("We have previously considered both publications and concluded that neither imposes judicially enforceable duties.")).

Moreover, the ALJ did not err in the broader sense of her duty to develop the record. Under the governing regulation, the ALJ was required to develop Plaintiff's medical history only for the twelve months preceding August 2016, the month in which Plaintiff protectively filed the current application, "unless there [was] a reason to believe that development of an earlier period [was] necessary." *See* 20 C.F.R. § 416.912(d) (2015). The ALJ complied with the regulation by developing the current record with evidence dating back to January 2015. (AR 706.) The current record did not suggest a reason to believe that development of an earlier period was necessary. In the first place, any connection between the current record and the prior case file was tenuous because the Commissioner determined in the interim that Plaintiff was no longer disabled as of May 1, 2014 (AR 160-67), and that determination was final. Moreover, Plaintiff's counsel could have requested the issuance of a subpoena for Plaintiff's prior case file, *see* 20 C.F.R. § 416.1450(d)(2) (2013), but did not do so. Finally, Plaintiff's primary reason for why the prior case file was necessary, his genetic disorder (Joint Stip. at 31), was sufficiently developed and explained in the current record, which shows that a genetic disorder was not the likely cause of his symptoms (AR 948, 952).

For these reasons, the ALJ did not err by failing to obtain, on her own motion, Plaintiff's prior case file relating to his prior disability award. *See Wagner v. Colvin*, 2015 WL 2089402, at *2-*3 (W.D. Wash. May 5, 2015) (holding that an ALJ had no duty to develop the record

1
2
3
4
5
6
7

with evidence supporting a claimant's prior award of disability benefits, for similar reasons); *Castelblanco v. Colvin*, 2014 WL 3964950, at *5-*7 (N.D. Cal. Aug. 13, 2014) (same); *Aker v. Astrue*, 2012 WL 1605103, at *4 (C.D. Cal. May 8, 2012) (same); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) ("But because [the claimant] *was* represented by counsel, because the fact of his impairment was not in dispute, and because counsel offered no other reasons that the ten-year old file might be relevant, we cannot say that the ALJ abused his discretion in failing to subpoena it on his own initiative.") (emphasis in original).

8
9

**CONCLUSION**

10
11
12
13

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error.  Neither reversal of the ALJ's decision nor remand is warranted.

14
15
16

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

17
18
19

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

20
21

LET JUDGMENT BE ENTERED ACCORDINGLY.

22
23

DATE: June 25, 2020

24
25
26

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

27
28

23